# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STEVEN MATTHEW DONALDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18cv563 |
| | ) | |
| OFFICER S. BAKER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Defendant's Motion for Summary Judgment" (Docket Entry 26) (the "Motion").[1] For the reasons that follow, the Court should grant the Motion.

## BACKGROUND

Alleging violation of his constitutional rights during his incarceration at Scotland Correctional Institution ("Scotland CI"), Steven Matthew Donaldson (the "Plaintiff") sued officer "S. Baker" (at times, the "Defendant" or "Officer Baker") and two "John Doe" defendants in connection with an incident on October 17, 2017 (at times, the "Incident Date"). (Docket Entry 2 (the "Complaint") at 1-5.)[2]

---

1 For legibility reasons, this Opinion uses standardized capitalization and spelling, and omits the word "the" before "Plaintiff," in all quotations from the parties' materials.

2 Docket Entry page citations utilize the CM/ECF footer's pagination.

According to Plaintiff's unverified Complaint:

> On [October 17, 2017,] at approx[imately] 3-4 pm[, Plaintiff] was involved in an altercation with [Scotland CI] staff where [he] was maced and placed in restraints behind [his] back. [Plaintiff] was being escorted by Unit Manager John Doe and Officer John Doe down the blue unit hallway-connector when both John Doe officers allowed Officer S. Baker [to] come[] up behind [Plaintiff] with cruel and evil intentions and strike[] him] over the head with her baton and use[] racial comments[,] Quote you bitch ass white boy[,] which violates [Plaintiff's rights under the] 8th and 14th Amendments. There w[ere] multiple officers around during this incident but due to [Plaintiff] being maced[, he] could not see. [However,] where this incident took place has video cameras on both ends of the hallway.

(Id. at 5.) "As a result of this incident[, Plaintiff] had to be taken to outside medical to have seven staples placed in the back of [his] head." (Id.) He "ha[s] constant headaches and numbness to the back of [his] head," for which he "ha[s] been placed on Tylenol." (Id.)

Contending that "Officer Baker" acted with "evil intentions" and callously and indifferently to his rights, Plaintiff seeks "actual damages in the amount of $50,000 for pain and suffering and punitive damages in the amount of $75,000." (Id.) The Court dismissed Plaintiff's claims against the John Doe defendants "for failure to state a claim upon which relief can be granted at this time" (Docket Entry 8 at 1), but allowed Plaintiff's eighth-amendment excessive force claim to proceed against Officer Baker (see Docket Entry 4 at 3; see also Docket Entry 8 at 1 (adopting Docket Entry 4)).

2

Following close of discovery (see Text Order dated Nov. 12, 2019 (granting Plaintiff's request to extend discovery deadline to February 24, 2020)), Defendant moved for summary judgment (see Docket Entry 26). That same day, the Clerk notified Plaintiff of his right to respond to the Motion, warning him, inter alia, that his

> failure to respond or, if appropriate, to file affidavits or evidence in rebuttal within the allowed time may cause the [C]ourt to conclude that the defendants' contentions are undisputed and/or that you no longer wish to pursue the matter. Therefore, unless you file a response in opposition to the motion, it is likely your case will be dismissed or judgment granted in favor of the defendants.

(Docket Entry 30 at 1; see also id. (cautioning Plaintiff that any "affidavits must be made on personal knowledge, contain facts admissible in evidence and be made by one shown to be competent to testify").) Plaintiff thereafter sought (see Docket Entry 31 at 1) and obtained (see Text Order dated Nov. 23, 2020) an extension of his deadline to respond to the Motion. (See id. (establishing new response deadline of January 29, 2021).) However, Plaintiff filed no response to the Motion. (See Docket Entries dated Nov. 23, 2020, to present.)

Accordingly, the undisputed record reflects the following:[3]

---

3  Because Plaintiff did not verify his Complaint (see generally Docket Entry 2) or otherwise attest to its contents "as true under penalty of perjury," as permitted under 28 U.S.C. § 1746, see Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988) (explaining that Section 1746 "permits unsworn declarations to substitute for an affiant's oath if the statement
(continued...)

Defendant has served as a correctional officer at Scotland CI since approximately April 2014. (Docket Entry 28-1, ¶ 2.) On the Incident Date, Defendant "was assigned to the Blue Unit, D-E-F Pods," and "Plaintiff was then housed in F Pod." (Id., ¶ 3.) Defendant "was responsible for, among other things, conducting chow call for F Pod, which involved making sure that the offenders in F Pod walked to the dining hall." (Id., ¶ 4.) "The inmates in this unit, including Plaintiff, are not restrained in any way when walking to and from the dining hall." (Id., ¶ 7.)

"On October 17, 2017, when [she] was conducting chow call in the corridor, [Defendant] saw Plaintiff walking from F Pod toward the dining hall." (Id., ¶ 6.) "A few moments later, in the corridor, [Defendant] saw Plaintiff punch Correctional Officer Felecia Pate in the face with a closed fist without provocation and without warning." (Id., ¶ 8.) "There is a video that shows, at 3:15:43 PM, Plaintiff throwing his first punch at Officer Pate, a 'haymaker' punch with his right arm." (Id., ¶ 9.)[4] "He punched

---

3(...continued)
contained therein is made 'under penalty of perjury' and verified as 'true and correct'"), the Complaint's unsworn allegations do not constitute evidence for summary judgment purposes, see In re French, 499 F.3d 345, 358 (4th Cir. 2007) (Whitney, J., concurring); Reeves v. Hubbard, No. 1:08cv721, 2011 WL 4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011), recommendation adopted, slip op. (M.D.N.C. Nov. 21, 2011).

4   Defendant filed the Motion and supporting exhibits electronically (see Docket Entries 26 to 28-8), but, also through an electronic filing, requested permission to manually file a flash
(continued...)

Officer Pate with a closed fist in the face and head numerous times in the approximately three seconds it took [Defendant] to get to him and Officer Pate." (Id., ¶ 10.) "As [Defendant] ran to Officer Pate, [Defendant] could see that she was losing consciousness or had already lost consciousness, and she was not able to fight back or even protect herself." (Id., ¶ 11.) "As [Defendant] ran to Officer Pate, [Defendant] believed that [Officer Pate] was in imminent danger of serious bodily injury or even death." (Id., ¶ 12.)

"In the location where Plaintiff was assaulting Officer Pate, there were numerous other inmates." (Id., ¶ 13.) "The proximity of the other inmates, as well as the proximity of Plaintiff to Officer Pate, made the use of pepper spray unfeasible in that moment." (Id., ¶ 14.) "As [she] ran to Officer Pate, [Defendant] called out a verbal command to Plaintiff to stop what he was doing. Plaintiff ignored [her] command." (Id., ¶ 15.) "When [she] reached Plaintiff, [Defendant] continued to command him to stop, and Plaintiff continued to ignore commands." (Id., ¶ 16.) "Since Officer Pate was in imminent danger, [Defendant] utilized [her]

---

4(...continued)
drive containing the referenced video (see Docket Entry 29 at 1-2). The Court granted that request, directing Defendant to manually file the flash drive containing the video by November 2, 2020. (See Text Order dated Oct. 27, 2020.) However, the docket contains no indication that Defendant complied with this order or otherwise manually filed the video (see Docket Entries dated Oct. 26, 2020, to present), and the undersigned has been unable to locate any such video among the Court's records.

5

baton in a counterstrike against Plaintiff, which is an approved method of regaining control of a violent inmate, in an effort to stop the attack on Officer Pate." (Id., ¶ 17.) "When [Defendant] struck Plaintiff with [her] baton, he was not restrained, and he was continuing his violent attack on a helpless Officer Pate." (Id., ¶ 18.) "After [Defendant] struck Plaintiff, he turned and punched [her] with a closed fist on the left side of [her] face, and [she] was no longer able to assist in the efforts to regain control of Plaintiff." (Id., ¶ 19.) "After [she] was punched by Plaintiff, [Defendant] did not use force of any kind on Plaintiff again." (Id., ¶ 20.)

"[Defendant] struck Plaintiff only one time before other officers arrived at the scene and regained control of Plaintiff." (Id., ¶ 21.) "[Defendant] did not hit Plaintiff in the head with [her] baton after he was restrained and back under control." (Id., ¶ 22.) "[Defendant] did not strike Plaintiff, or otherwise use force on Plaintiff, after he was restrained and back under the control of the other correctional officers." (Id., ¶ 23.) "[Defendant] did not strike Plaintiff when he was being escorted away from the scene of the incident." (Id., ¶ 24.) "[Defendant] never called Plaintiff a 'bitch ass white boy' or any other inappropriate names." (Id., ¶ 25.) "[Defendant's] only intention in using force during the incident was to use the minimal amount of force needed to obtain a correctional objective, namely, to stop

6

the attack on Officer Pate, regain control of Plaintiff, and restore order." (Id., ¶ 26.) "[Defendant's] intentions in using force during the incident were not to be cruel or evil." (Id., ¶ 27.) "[Defendant] was injured by Plaintiff in the incident (i) when he punched [her] in the face with a closed fist and (ii) when [she] thereafter slipped in the pepper spray onto [her] left knee; as a result, [she] had to be seen by prison medical staff, and then by an outside hospital." (Id., ¶ 28.)

Jamie Hammonds ("Hammonds"), a Scotland CI correctional lieutenant (Docket Entry 28-7, ¶ 2), served as "a correctional housing unit manager at Scotland CI" in October 2017 (id., ¶ 3). "On October 17, 2017, a Code 7 (staff member down) was called in [his] unit, and [Hammonds] responded to the D-E-F corridor where [he] found Plaintiff. Plaintiff had just assaulted a number of staff members." (Id., ¶ 5.) "When [he] arrived at Plaintiff's location, [Hammonds] handcuffed Plaintiff." (Id., ¶ 6.) "Immediately thereafter, [Hammonds] assisted in escorting Plaintiff to the medical unit." (Id., ¶ 7.) "[Hammonds] understand[s] that Plaintiff claims in his lawsuit against [Defendant] that, while [Hammonds] was escorting Plaintiff to the medical unit, Officer Baker struck Plaintiff. This is untrue, and it did not happen." (Id., ¶ 8.) "[Hammonds] also understand[s] that Plaintiff claims in his lawsuit against Officer Baker that, while [Hammonds] was escorting Plaintiff to the medical unit, Officer Baker yelled at

7

Plaintiff and called Plaintiff inappropriate names. This, too, is untrue, and it did not happen." (Id., ¶ 9.)

Also on October 17, 2017, Karen Henderson ("Henderson") served as "a correctional captain and the facility intelligence officer at Scotland CI." (Docket Entry 28-4, ¶ 3.) "As a correctional captain, [her] job duties involved assisting in planning, supervising, and coordinating activities at Scotland CI. [She] was also responsible for serving as shift supervisor." (Id., ¶ 4.) "[She] also assisted in planning and supervising personnel actions, administrative affairs, officers' work schedule[s,] and coordinating activities involving discipline, security, and the welfare of the inmate population." (Id.) "As the facility intelligence officer at Scotland CI, [her] duties included investigating, monitoring, and reporting all possible gang-related activity at the prison." (Id., ¶ 5.)

"On the Incident Date, Plaintiff was serving a sentence for Larceny After Breaking and Entering and Habitual Breaking and Entering after having been previously convicted of Felony Breaking and Entering and Larceny After Breaking and Entering." (Id., ¶ 6.) "During his latest incarceration, Plaintiff was charged with and found guilty of fifteen (15) infractions, ranging from Assault on Staff with a Weapon to Involvement with a Gang or Security Risk

8

Group."  (Id., ¶ 7.)[5]  "On the Incident Date, Plaintiff was classified as being in a Security Risk Group ([an] 'SRG'), called Folk Nation.  In fact, Plaintiff was classified as being in the highest level of the Folk Nation — Level III.  The Level III classification means he was one of the most dangerous inmates with links to Folk Nation leadership."  (Id., ¶ 9.)  "Since Plaintiff was SRG classified, [Henderson] conducted an investigation of the use-of-force incident that is the subject of this [lawsuit] to see if it was gang related."  (Id., ¶ 10.)

Henderson interviewed Plaintiff as part of this investigation. (Id., ¶ 11.)  "During [Henderson's] interview with Plaintiff, he confirmed that he was a Level III member of the SRG, Folk Nation" (id., ¶ 12) and "admitted that he started the incident, without provocation and by a surprise attack, by repeatedly punching correctional officer Felecia Pate in the face with a closed fist" (id., ¶ 13).  "Plaintiff further admitted in [this] interview that his assault on Officer Pate was a 'hit' ordered by high-ranking members of the Folk Nation."  (Id., ¶ 14.)  "Never during [Henderson's] interview with Plaintiff did he allege that [Defendant] hit him in the head with her baton after he was restrained and back under control."  (Id., ¶ 15.)  "Never during

---

5 These infractions began on the Incident Date and continued through August 2020, and included, inter alia, four separate infractions for assaulting staff with a weapon, as well as separate active rioter and weapon possession infractions. (See Docket Entry 28-6 at 1.)

9

[Henderson's] interview with Plaintiff did he allege that Officer Baker called him a 'bitch ass white boy' or any other inappropriate names." (Id., ¶ 16.) "As a result of his conduct on the Incident Date, Plaintiff was charged and found guilty of the infractions of A-03 Assault On Staff With Weapon and A-14 Involvement With Gang." (Id., ¶ 17.)

**DISCUSSION**

**I. Relevant Standards**

**A. Summary Judgment**

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of such dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). In other words, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted,

[and] all internal conflicts in it resolved favorably to him.'" Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets in original) (quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).  If, applying this standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper."  Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248. Moreover, "the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment."  Lewis v. Eagleton, No. 4:08cv2800, 2010 WL 755636, at *5 (D.S.C. Feb. 26, 2010) (citing Baber v. Hospital Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992)), aff'd, 404 F. App'x 740 (4th Cir. 2010); see also Pronin v. Johnson, 628 F. App'x 160, 161 (4th Cir. 2015) (explaining that "[m]ere conclusory allegations and bare denials" or the nonmoving party's "self-serving allegations unsupported by any corroborating evidence" cannot defeat summary judgment).  Finally, factual allegations in a complaint or court filing constitute evidence for summary judgment purposes only if sworn or otherwise made under penalty of perjury.  See Reeves v. Hubbard, No. 1:08cv721, 2011 WL

11

4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011), recommendation adopted, slip op. (M.D.N.C. Nov. 21, 2011).

## B. Eighth-Amendment Standards

"The Eighth Amendment protects prisoners from unnecessary and wanton infliction of pain." Thompson v. Commonwealth of Va., 878 F.3d 89, 97 (4th Cir. 2017) (internal quotation marks omitted). "That protection imposes on prison officials an affirmative 'obligation to take reasonable measures to guarantee the safety of . . . inmates.'" Id. (ellipsis in original) (quoting Whitley v. Albers, 475 U.S. 312, 320 (1986)). Accordingly, in evaluating an eighth-amendment excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. at 98 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). In conducting this analysis, the Court considers "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (internal quotation marks omitted).

Notably, a prisoner need not suffer a significant injury to prevail on an excessive force claim. Thompson, 878 F.3d at 98; see also Hudson, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of

12

decency always are violated. This is true whether or not significant injury is evident." (citation omitted) (citing Whitley, 475 U.S. at 327)). "The excessive force analysis thus focuses on the maliciousness of the force used, not the severity of the injury that results from that force." Thompson, 878 F.3d at 101; see also Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). As such, an injury qualifies as "sufficiently serious for purposes of the objective component of an [e]ighth[-a]mendment excessive force claim as long as it rises above the level of de minimus harm." Iko, 535 F.3d at 238.[6]

As for the subjective component, "[t]he state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" Id. at 239 (quoting Whitley, 475 U.S. at 322); see also id. ("Put differently, the 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (quoting Hudson, 503 U.S. at 7)). The United States Supreme Court

---

6 Nevertheless, although "an excessive force plaintiff need not show significant injury, the extent of injury may supply insight as to the force applied." Cowart v. Erwin, 837 F.3d 444, 453 (5th Cir. 2016).

13

has identified four factors to assist courts in determining whether an officer acted with "wantonness":

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

Id. (quoting Whitley, 475 U.S. at 321). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321.

## II. Analysis

Defendant moves for summary judgment, "contend[ing] that the record establishes as a matter of law that she did not violate Plaintiff's Eighth Amendment rights or any of his other constitutional or legal rights." (Docket Entry 26 at 1.)[7] In so arguing, Defendant primarily focuses on the subjective component of an excessive force claim, asserting that "the *Whitley* factors demonstrate[] that the use of force was necessary and not

---

7  Defendant alternatively asserts her "entitle[ment] to prevail as a matter of law based upon qualified immunity." (Id.) Because, as discussed below, Defendant prevails on her excessive force contention, the Court need not address qualified immunity.

excessive" (Docket Entry 27 at 15). (See id. at 9-15.) Defendant's contention possesses merit.[8]

Turning to the first Whitley factor, "the record indicates that there was a need for the application of force," Adkins v. McDonald, No. 5:14-ct-3169, 2016 WL 7655775, at *4 (E.D.N.C. Feb. 23, 2016), aff'd, 667 F. App'x 395 (4th Cir. 2016). Specifically, the record reflects that, as unrestrained inmates walked to the dining hall, Plaintiff initiated an unprovoked surprise attack on Officer Pate, repeatedly punching her in the head and face, causing her to begin losing consciousness. (See Docket Entry 28-1, ¶¶ 4, 6-11; Docket Entry 28-4, ¶ 13.) The record further establishes

---

8  As noted, Plaintiff filed no opposition to the Motion. (See Docket Entries dated Oct. 26, 2020, to present.) Under this Court's Local Rules, "[i]f a respondent fails to file a response within the time required . . ., the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." M.D.N.C. LR 7.3(k). However, as the United States Court of Appeals for the Fourth Circuit has explained:

> in considering a motion for summary judgment, the district court *must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law. Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the district court must still proceed with the facts it has before it and determine whether the moving party is entitled to judgment as a matter of law based on those uncontroverted facts.

Robinson v. Wix Filtration Corp., 599 F.3d 403, 409 n.8 (4th Cir. 2010) (internal quotation marks and citation omitted) (emphasis in original).

that Plaintiff disobeyed Defendant's verbal commands to stop attacking Officer Pate (see Docket Entry 28-1, ¶¶ 15-16) and that the presence in the area "where Plaintiff was assaulting Officer Pate . . . [of] numerous other inmates" (id., ¶ 13), in Defendant's view, made "use of pepper spray unfeasible in that moment" (id., ¶ 14).

In addition, the record shows that Defendant struck Plaintiff one time with her baton "in an effort to stop the attack on Officer Pate" (id., ¶ 17), at which point Plaintiff "turned and punched [Defendant] with a closed fist on the left side of [her] face," preventing further efforts on her part to regain control of Plaintiff (id., ¶ 19). Finally, the record reveals that, on the Incident Date, "Plaintiff was classified as being in the highest level of the Folk Nation" SRG, meaning that "he was one of the most dangerous inmates with links to Folk Nation leadership." (Docket Entry 28-4, ¶ 9.)[9]

"[I]t is reasonable under these circumstances that Defendant[] perceived Plaintiff was a security risk and that force was needed to restore order." Adkins, 2016 WL 7655775, at *4; see also Boose v. Adkins, No. 3:18-cv-1480, 2020 WL 3086885, at *13 (S.D. W. Va. May 20, 2020) (explaining that "[c]ourts in this Circuit have routinely held that law enforcement and correctional officers may

---

9 Indeed, after the incident, Plaintiff admitted "that his assault on Officer Pate was a 'hit' ordered by high-ranking members of the Folk Nation." (Id., ¶ 14.)

16

deploy force in response to threatening, disruptive, or assaultive behavior" and that "[t]he need for the application of force when an inmate engages in disruptive behavior and initiates physical confrontation with a correctional officer is clear") (collecting cases), report and recommendation adopted, No. CV 3:18-1480, 2020 WL 3078333 (S.D. W. Va. June 10, 2020). Accordingly, the first Whitley factor weighs in Defendant's favor.

Next, the Court considers "the relationship between the need and the amount of force that was used." Iko, 535 F.3d at 239 (internal quotation marks omitted). This factor also favors Defendant. Here, after Plaintiff failed to obey her verbal commands, Defendant employed a single baton strike in an attempt to stop Plaintiff from continuing his unprovoked physical assault on another correctional officer, who had begun losing consciousness and thus remained unable to defend herself. (See Docket Entry 28-1, ¶¶ 8-21.) The single strike had no demonstrable effect on Plaintiff, who responded by "turn[ing] and punch[ing Defendant] with a closed fist on the left side of [her] face." (Id., ¶ 19.) "Under these circumstances, facing . . . an imminent threat to [Officer Pate's] safety, [Defendant's] response was proportional to the threat presented." Boose, 2020 WL 3086885, at *14. Accordingly, the second Whitley factor weighs against Plaintiff.

The third factor, "the extent of any reasonably perceived threat that the application of force was intended to quell," Iko,

17

535 F.3d at 239, also favors Defendant. Here, Plaintiff — a known, high-ranking gang member — initiated a surprise violent attack on a correctional officer as unrestrained inmates walked to the dining hall and then ignored repeated verbal commands to stop his assault. (See Docket Entry 28-1, ¶¶ 4, 6-16; Docket Entry 28-4, ¶¶ 9-13.) As such, Plaintiff posed a significant threat to, inter alia, Officer Pate and the other inmates in the hallway; the third Whitley factor thus supports Defendant's position. See, e.g., Boose, 2020 WL 3086885, at *14 (finding for officer on this factor where inmate "began arguing with [officer], refused her attempts to make him stand back, and responded to her attempts by deploying force himself" by shoving and possibly striking officer, and noting that "[c]orrectional officers are certainly justified in deploying force in response to the threat of physical harm").

The final Whitley factor, "any efforts made to temper the severity of a forceful response," Iko, 535 F.3d at 239 (internal quotation marks omitted), similarly weighs against Plaintiff. Here, the record reflects that Defendant repeatedly commanded Plaintiff to cease his assault on Officer Pate before Defendant employed a single baton "counterstrike" against Plaintiff (Docket Entry 28-1, ¶ 17), who continued his assault on Scotland CI officers by then punching Defendant. (See id., ¶¶ 15-19.) As such, the fourth factor also undermines Plaintiff's excessive force claim.

18

In sum, the record establishes that Defendant's single baton strike "w[as] a good faith effort to maintain and restore discipline and not excessive force," Bullard v. Peppers, No. 5:16-ct-3240, 2019 WL 826455, at *6 (E.D.N.C. Feb. 21, 2019) (internal quotation marks omitted). See, e.g., Grayson v. Peed, 195 F.3d 692, 696-97 (4th Cir. 1999) (holding that five-man cell extraction team who pinned inmate face down and then, "[d]uring the course of the struggle," punched him "seven to nine times" after inmate stuck hand through food slot, refused commands to remove his hand, and jammed his foot in cell doorway when officers opened cell door, id. at 694, did not employ constitutionally excessive force); Bullard, 2019 WL 826455, at *4-6 (finding that officer did not engage in excessive force where he punched inmate multiple times and hit him with a padlock after inmate removed handcuffs, clinched his fist, and yelled as officers approached and then engaged in struggle with officer); Adkins, 2016 WL 7655775, at *2, 4-5 (concluding that officers who struck inmate with baton after he grabbed one officer's arm, refused command to let go, and attempted to pull officer toward inmate did not employ excessive force). Accordingly, the Court should grant Defendant's Motion.

## **CONCLUSION**

The undisputed record forecloses Plaintiff's excessive force claim against Defendant.

**IT IS RECOMMENDED** that the Motion (Docket Entry 26) be granted.

This 24th day of June, 2021.

                                        /s/ L. Patrick Auld
                                            **L. Patrick Auld**
                                   **United States Magistrate Judge**